**Victor C. MBAKPUO, Appellant,**

v.

**Thecla EKEANYANWU,
et al., Appellees.**

**No. 96–CV–1799.**

District of Columbia Court of Appeals.

Argued April 22, 1999.
Decided Sept. 30, 1999.

---

Victor C. Mbakpuo, appellant pro se.

Alexander Agiliga, Washington, DC, was on the brief for appellees.

Before TERRY and RUIZ, Associate Judges, and BELSON, Senior Judge.

TERRY, Associate Judge.

This case involves the unauthorized use of names in the letterhead of a law office. Appellant Mbakpuo appeals from an injunction prohibiting him from using the appellees' names without their permission. He claims that the trial court committed reversible error by (1) denying his motion

1. Mbakpuo also asks this court to conduct a *de novo* review of all of the evidence, based on the unsubstantiated claim that the trial judge was so prejudiced against him as to deny him due process of law. There is absolutely no support in the record for this contention, and in any event it is not our function, as an appellate court, to make factual findings or weigh the evidence.

2. The record reflects that, following the Ohio hearing, the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio recommended that Mbakpuo be indefinitely suspended from the practice of law in Ohio. Among other violations, the Ohio Disciplinary Counsel found that Mbakpuo had held himself out to clients as a licensed attorney in the state courts of Maryland and federal courts in Virginia, even though he was licensed to practice only in Ohio and in the United States District Court in Maryland. Disciplinary Counsel also found that, during a hearing before the District of Columbia Com-

to compel discovery and impose sanctions, (2) precluding him from calling appellee Agiliga as a witness, (3) excluding an exhibit that was not disclosed in a timely fashion prior to trial, (4) denying his motion to dismiss the complaint or, in the alternative, for summary judgment, and (5) granting injunctive relief absent a showing of reasonably expected future harm.[1] We affirm.

I

On September 2, 1994, appellees Valentine Anyaibe, Alexander Agiliga, and Thecla Ekeanyanwu filed this suit in the Superior Court, seeking an injunction to prohibit appellant Mbakpuo from using their names on his legal letterhead without their permission. A status hearing was held two weeks later, on September 16, but because he had to appear before a disciplinary committee in Ohio on that date,[2] Mr. Mbakpuo was unable to attend the status hearing.

Discovery began in early November 1994. In late December Mr. Mbakpuo sent appellees two letters claiming that responses to his interrogatories and request for documents were overdue.[3] On

mittee on Unauthorized Practice of Law, Mbakpuo threatened to kill the Chairman of that committee, declaring at one point that if he had a gun, he would empty twelve rounds into the Chairman's head and walk off delighted. He then proclaimed that the Chairman was "a worthless cruel creature that will die by his treachery and mischief" and that if he "kill[ed] [the Chairman], he should know that he dug his own grave by mischief and treachery and has made a murderer out of me."

3. Mbakpuo claims that the appellees never responded to any of his discovery requests prior to trial, while the appellees represent that all of Mbakpuo's requests were answered on time. The record on appeal does not contain either the trial court's scheduling order or its order denying Mbakpuo's motion to compel, but it does contain two sets of answers to Mbakpuo's interrogatories filed by appellee Anyaibe, the second of which was mailed on August 11, 1995.

January 6, 1995, he filed a motion to compel discovery and impose sanctions on the appellees, which the trial court denied.

In his opening statement at trial, Mbakpuo argued that an injunction should not be issued because he had no intention of using the appellees' names on his letterhead in the future. The trial judge interrupted him to ask whether he was willing either to enter into a consent decree or simply to promise under oath that he would refrain from the challenged conduct. Mbakpuo declined to do either, telling the judge that his reason for refusing to consent to a binding agreement was that he had "an interest in developing testimony here that [he would] use in perjury prosecution[s] . . . ." He went on to explain:

> Someone prevented me from getting waived in [to the District of Columbia Bar]. D.C. only said if you can show us that you are associated with them in the practice of law, we will admit you. They wrote letters. They ask me if I can clearly show because I intend to use this record to further [sic] even if I have to dedicate my life to this.

After hearing further from Mr. Mbakpuo, the judge ruled that the trial would go forward, saying, "I can't take away [the plaintiffs'] day in court. . . . If you want to try to go through this litigation to prove some point down the road, then that's on you."

The events giving rise to appellees' suit began in 1993, when several complaints were lodged against Mr. Mbakpuo with this court's Committee on Unauthorized Practice of Law. See D.C. Ct.App. R. 49. At that time Mbakpuo was an attorney working out of an office in the District of Columbia, but he was licensed to practice only in the state of Ohio and in the United States District Court for the District of Maryland. In response to the complaints of unauthorized practice, Mr. Mbakpuo claimed that he was working under the supervision of the appellees, all of whom were admitted to practice in the District of Columbia, while his application for admission to the District of Columbia Bar on motion (i.e., without examination) was pending.

The appellees claimed that none of them had ever had any professional contact with Mbakpuo, with the exception of Ms. Ekeanyanwu.[4] Before being admitted to the District of Columbia Bar and joining the law firm of Anyaibe and Agiliga, Ms. Ekeanyanwu worked as a sole practitioner out of her home in Maryland. She represented clients in the District of Columbia, but only in matters before federal agencies. While working on one such case in late 1991, Ms. Ekeanyanwu sent several letters to the agency using letterhead bearing Mr. Mbakpuo's name. The last of these letters was mailed on February 18, 1992. In addition, Ms. Ekeanyanwu submitted five motions to enable Mr. Mbakpuo to appear pro hac vice in the District of Columbia Superior Court in accordance with D.C. Ct.App. R. 49(c)(7). Ms. Ekeanyanwu maintained, however, that she was never associated with Mr. Mbakpuo in the practice of law, and that she never consented to the use of her name or her partners' names on his letterhead.

After the Committee on Unauthorized Practice initiated its investigation, Mr. Mbakpuo approached the appellees with sample letterhead bearing the heading "Mbakpuo, Ekeanyanwu, Anyaibe & Agiliga,"[5] but they declined to consent to the use of their names alongside of his. Mbakpuo was apparently undeterred. The record contains a letter dated April 9, 1993, bearing his signature and purporting

---

4. Mr. Anyaibe testified that neither he nor Mr. Agiliga had ever had any association with Mbakpuo, though for a time they had all worked in the same multi-office suite in an office building in downtown Washington.

5. The letterhead also included the names of David Davenport, Jerry L. Lewis, Len Henderson, Johann Richter, M.S., Ph.D., Onyebuchi Enechionyia, LL.M., and Peter Nyang, LL.M, none of whom were known to the appellees.

to be from the firm of "Mbakpuo, Ekeany-anwu, Anyaibe & Agiliga."

On June 7, 1993, the appellees sent a letter to the Chairman of the Committee on Unauthorized Practice stating that they had never been associated with Mr. Mbakpuo in the practice of law. Although a copy of this letter was also sent to Mbakpuo, he continued to use the disputed letterhead in his law practice. In April 1994 a dissatisfied client of Mbakpuo produced a letter, written by him on that letterhead, which had been sent in February of that year.[6] Given this persistent pattern of conduct,[7] the appellees argued that only a court order would convince Mr. Mbakpuo to cease the unauthorized use of their names.

While cross-examining Ms. Ekeanyan-wu, Mr. Mbakpuo attempted to question her about a document that had been excluded prior to trial on the ground that it had not been timely disclosed during discovery and was not newly discovered evidence.[8] The document was a letter which, according to Mbakpuo, showed that the appellees had engaged in some discussions about establishing a joint letterhead with Mbakpuo. The court refused to allow Mbakpuo to introduce the document, even as impeachment evidence.

After hearing all the evidence and considering the arguments of both sides, the trial judge issued an order enjoining Mr. Mbakpuo from the further use of the names of Ekeanyanwu, Anyaibe, and Agiliga "in any form or combination" without their express written permission. The judge credited the testimony of Ms. Ekeanyanwu and Mr. Anyaibe and found that "the undisputed evidence is that the [ap-

pellant] did use [appellees'] names without their knowledge and their consent," that there was no adequate remedy at law which would protect the appellees from the future unauthorized use of their names, and that the balance of equities favored the appellees.

## II

### A. Claims Not Properly Presented

██ Mr. Mbakpuo's failure to designate relevant portions of the record prevents us from reaching the merits of two of his claims of error. Our Rule 10 provides, in pertinent part:

> The designation [of the record] shall include (i) all findings of fact and conclusions of law of the court; (ii) any written opinion of the court; (iii) the judgment or order from which appeal is taken; (iv) the notice of appeal with the date of its filing; and (v) any other relevant material.

D.C. Ct.App. R. 10(a)(1). At a minimum, this rule requires the appellant to designate enough of the record to support his arguments for reversal. Failure to do so precludes appellate review of the alleged error. See, e.g., Stebbins v. Stebbins, 673 A.2d 184, 188 n. 5 (D.C.1996); District of Columbia v. Patterson, 667 A.2d 1338, 1347 (D.C.1995); Cobb v. Standard Drug Co., 453 A.2d 110, 111 (D.C.1982).

██ We have often reiterated "that trial court rulings come with a presumption of correctness and that it is the responsibility of the appellant to furnish an appellate record evidencing the claimed trial court error." Stockard v. Moss, 706 A.2d 561, 567 (D.C.1997) (citation omitted); see Har-

---

6. The client contacted the appellees with his complaints about Mbakpuo's representation of him because he believed, on the basis of the letterhead, that the appellees were Mbakpuo's law partners. Cf. Landise v. Mauro, 725 A.2d 445, 451 n. 14 (D.C.1998) (referring to doctrine of partnership by estoppel).

7. Ekeanyanwu testified that Mbakpuo had engaged in similar conduct in the past. In 1992

she received a call from the Chairman of the Maryland Committee on Unauthorized Practice informing her that Mbakpuo was using her letterhead in that state without her permission.

8. The trial court's pre-trial order excluding this document has not been included in the record on appeal.

*vey v. United States*, 385 A.2d 36, 37 (D.C. 1978). Consequently, a party challenging any trial court decision bears the burden of presenting this court "with a record sufficient to show affirmatively that error occurred." *Cobb*, 453 A.2d at 111 (citations omitted); *accord, D.C. Transit System, Inc. v. Milton*, 250 A.2d 549, 551 (D.C.1969). Mr. Mbakpuo has not met his obligations in this respect.

 Mbakpuo has failed to include in the record on appeal both the trial court's order denying his motion to compel discovery and impose sanctions and the scheduling order upon which that motion was based.[9] *See* Super. Ct. Civ. R. 16(b)(1). He has also failed to include the pre-trial order containing the trial court's original reasons for excluding the letter pertaining to discussions about a joint letterhead. Although he makes various representations in his brief about the trial court's basis for these rulings,[10] "we cannot base our review of errors upon statements of counsel which are unsupported by [the] record." *D.C. Transit*, 250 A.2d at 550, cited in *Cobb*, 453 A.2d at 112. Without having before us the actual order which Mr. Mbakpuo challenges, "we are unable to determine the basis for the trial court's ruling or whether any error occurred." *In re Roxborough*, 663 A.2d 553, 555 (D.C.1995) (failure to designate contempt order); *see Elliott v. Healthcare Corp.*, 629 A.2d 6, 10 (D.C. 1993) (failure to designate order awarding attorney's fees); *Jonathan Woodner Co. v. Adams*, 534 A.2d 292, 294–295 (D.C.1987) (failure to include transcript of hearing). We therefore hold that these omissions from the record preclude our review of Mr. Mbakpuo's claims of error with respect to (1) the denial of his motion to compel discovery and impose sanctions and (2) the exclusion of the letter allegedly concerning the discussions about a joint letterhead.

### B. *Exclusion of the Testimony of Mr. Agiliga*

After calling appellees Ekeanyanwu and Anyaibe to the stand and questioning them, Mbakpuo attempted to call appellee Agiliga. Upon objection, the trial court ruled that because Agiliga was appellees' attorney of record, as well as a party, Mbakpuo was required to provide some sort of notice, either in a pre-trial statement or during the pre-trial conference, of his intention to call Agiliga as a witness. Since he had not given such notice, the court refused to allow him to put Mr. Agiliga on the stand.

Because neither appellant nor appellees submitted a pre-trial statement in this case, the trial court, in its pre-trial order, restricted each side to calling only the actual parties to the suit as witnesses. Mbakpuo claims that this order provided adequate notice of his intent to call all of the appellees, including Mr. Agiliga, and asserts that Agiliga's status as counsel of record was not a sufficient reason for refusing to allow him to call Agiliga as a witness.

 Under Super. Ct. Civ. R. 16(e)(5),[11] "[a] trial court has broad discretion ... in refusing to admit evidence

---

9. We note also that "[t]he trial court has wide latitude in resolving discovery problems, and its decision will not be disturbed on appeal unless that discretion has been abused." *Rosenthal v. National Produce Co.*, 573 A.2d 365, 374 (D.C.1990) (citations omitted); *accord, e.g., White v. Washington Metropolitan Area Transit Authority*, 432 A.2d 726, 728–729 (D.C.1981). From the scant record available, it does not appear that the trial court abused its discretion in this case, especially since appellant did receive some discovery prior to trial, which belies his assertion that he was forced to go to trial "blind."

10. For instance, Mbakpuo claims in his brief that the trial court's reason for denying his motion was that he waived his right to discovery because he did not attend the September 16 hearing.

11. Rule 16(e)(5) states in part:

Except for plaintiff's rebuttal case or for impeachment purposes, no party may offer at trial the testimony of any witness not listed in the pretrial statement of the parties ... without leave of court.

which was required to be disclosed in a pretrial statement . . . ." *Cooper v. Safeway Stores, Inc.,* 629 A.2d 31, 35 (D.C. 1993). We find no abuse of that discretion here. Mr. Mbakpuo was fully aware that Mr. Agiliga was representing the other two appellees, as well as himself. Permitting Mbakpuo to call Agiliga to the stand, without prior notice that he intended to do so, would have needlessly interrupted and prolonged the proceedings. Ekeanyanwu and Anyaibe, who were surely not prepared for such a contingency, would have been obliged either to hire outside counsel or to prepare themselves to act as counsel during the testimony of Mr. Agiliga. In addition, Mr. Mbakpuo told the court that his purpose in calling Agiliga was to lay a foundation for the introduction of certain records which allegedly would have shown that the appellees were associated with him before 1993. Even if he had been successful in this attempt, thereby casting doubt on appellees' statement that they had "never" been associated with him, the evidence would not have directly challenged appellees' basic allegation that Mbakpuo used their names without their consent in 1993 and 1994. On this record we hold that the trial court did not abuse its discretion in precluding Mr. Mbakpuo from calling Mr. Agiliga to the stand.

## C. *The Merits of the Injunction*

 The standard governing the issuance of an injunction was set forth by the Supreme Court in *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953):

The purpose of an injunction is to prevent future violations . . . and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circum-

stances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

*Id.* at 633, 73 S.Ct. 894 (citation omitted); *accord, e.g., Cruz–Foster v. Foster,* 597 A.2d 927, 930 (D.C.1991).

The crux of Mr. Mbakpuo's argument here is that the injunction was improperly granted because the appellees failed to produce any evidence establishing a reasonable probability of future harm. He insists that although he might have engaged in illegal conduct in the past, he had voluntarily ceased such activity by the time the case came to trial. In response, the appellees note that Mbakpuo admitted that he had unlawfully used their names on legal letterhead in the past and that he failed to prove that he had discontinued the practice. Mbakpuo complains that, by adopting the appellees' position, the trial court erroneously required him affirmatively to prove discontinuance, rather than placing on the appellees the burden of showing that the challenged conduct was likely to recur.

 Appellant's argument misconstrues the law governing the issuance of prohibitory injunctions. Because "[t]he defendant is free to return to his old ways," and because there is "a public interest in having the legality of the practices settled," it is well established that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case . . . ." *W.T. Grant,* 345 U.S. at 632, 73 S.Ct. 894 (citations omitted). While it is true that an injunction must be focused on future conduct, it is equally true that "a defendant's past conduct is important evidence—perhaps the most important—in predicting his probable future conduct." *Cruz–Foster,* 597 A.2d at 930 (citation omitted). Thus, once the plaintiff makes

out a *prima facie* case of "some cognizable danger of recurrent violation," a defendant arguing that an injunction should not be issued because of voluntary cessation of the challenged activity carries the heavy burden of "demonstrat[ing] that 'there is no reasonable expectation that the wrong will be repeated.'" *W.T. Grant*, 345 U.S. at 633, 73 S.Ct. 894 (footnote omitted).

■ Mr. Mbakpuo made no attempt whatever to carry that burden. As the trial court observed, he did not present a single piece of *evidence*, as opposed to *argument*, that the challenged conduct had been abandoned or was unlikely to be repeated. We also agree with the trial court that the "balance of harms" weighs decidedly in the favor of the appellees. *See Cruz–Foster*, 597 A.2d at 930–931. The injunction merely prohibits Mr. Mbakpuo from doing something that he has absolutely no right to do in the first place (and which he claims to have no intention of doing). On the other hand, the continued unauthorized use of appellees' names by Mr. Mbakpuo could very well cause irreparable harm to the reputation of their law firm.

The essence of appellant's argument is that he should not be prohibited from using the appellees' names in the future because he has no intention of doing so. Before the trial began, appellant was given every opportunity to avoid the issuance of an injunction by affirming this intention under oath or by entering into a consent decree. For reasons of his own, he chose to do neither. Instead, he proceeded to trial and sought to prove that he was in fact associated with the appellees at various times prior to 1993. Even if he had succeeded in this effort, it would have had no effect on the propriety of the injunction. Mr. Mbakpuo never even attempted to contest the appellees' basic allegations—that he had used their names without authorization in 1993 and 1994 and that there was some likelihood that he would continue to do so in the future. On the record presented, we hold that the trial court did not err either in denying Mr. Mbakpuo's pre-trial motion for dismissal or summary judgment or in ultimately granting appellees' request for an injunction.

The order enjoining appellant from the unauthorized use of appellees' names is accordingly

*Affirmed.*