TELEVISION CAPITAL CORPORA-
TION OF MOBILE, Appellant,

v.

PAXSON COMMUNICATIONS CORPO-
RATION and Dow, Lohnes & Albert-
son, PLLC, John R. Feore and Mi-
chael D. Basile, Appellees.

No. 04–CV–1329.

District of Columbia Court of Appeals.

Argued Jan. 31, 2006.
Decided March 16, 2006.

462

Richard I. Chaifetz, Columbia, MD, for appellant.

Lynn E. Calkins, Washington, with whom Philip T. Evans was on the brief, for appellee Paxson Communications Corporation.

Phillip J. Harvey for appellees Dow, Lohnes & Albertson, PLLC, John R. Feore and Michael D. Basile.

Before FARRELL and FISHER, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This litigation stems from a contractual dispute between appellant Television Capital Corporation of Mobile ("TCCM") and appellee Paxson Communications Corporation ("Paxson"). On the basis of an unpaid promissory note in which TCCM was the maker, and Paxson the payee, and notwithstanding an array of defenses asserted by appellant, a partial summary judgment was entered against appellant. The trial judge also dismissed four of appellant's counter-claims, without prejudice, because they were deemed premature at the time of the dismissal order. Lastly, the trial judge dismissed a tort action against appellees Dow, Lohnes & Albertson, PLLC, et al. ("DLA") on the grounds of an evidentiary deficiency. Upon review of these questions, we conclude that the trial judge did not commit reversible error, and therefore affirm.

I.

STATEMENT OF THE CASE

On January 13, 1998, TCCM and Paxson executed a Letter Agreement that provided that TCCM would attempt to acquire the exclusive rights for Paxson to obtain a construction permit for an analog television station to operate on Channel 61 in Mobile, Alabama. TCCM, in 1996, had previously filed an application with the Federal Communications Commission ("FCC") to obtain this permit. Two other companies, who are not parties in this matter, had also previously applied for the construction permit for that frequency. The Letter Agreement provided that Paxson would lend TCCM up to $6.0 million to bid at a private auction for the channel among all of the applicants or acquire exclusive rights to the channel via a private settlement agreement with the two other competing applicants. If TCCM was the successful bidder at auction or obtained the consent of the other two competing applicants to relinquish their rights to the construction permit, Paxson would pay TCCM $750,000 plus the difference between the winning bid and $6.0 million.

On January 29, 1998, TCCM and the two competing applicants executed a Settlement Agreement that would leave TCCM as the sole applicant for the construction permit in return for the payment of $400,000 to each of the other two applicants. The terms of the Settlement Agreement further stated that TCCM would place $800,000 into an escrow account pending the FCC's issuance of a final order granting the construction permit. As provided by the terms of the Letter Agreement, Paxson loaned TCCM $800,000, which was placed into the escrow account. TCCM executed a Promissory Note, the terms of which are governed by Florida law, agreeing to repay Paxson the $800,000 by January 29, 2000. Interest accrued on the note at the prime rate as listed in the WALL STREET JOURNAL. If the Promissory Note was not paid when due, interest accrued at a higher rate equal to the lower of eighteen percent or the highest rate allowed by law.

At or near the time that these documents were executed, the FCC issued a ruling that prohibited the grant of construction permits for any new television

stations that would operate on Channels 60 through 69 throughout the United States. As a result, Paxson sought to amend TCCM's application to substitute a construction permit for Channel 50 in lieu of Channel 61. FCC regulations, however, did not allow the filing of such amendments until the FCC permitted such filings for a brief interval in July 2000. The FCC ultimately did not approve this amended application because of conflicts with another broadcaster's plans for use of that frequency. Further delays ensued while Paxson tried to find a substitute channel that would satisfy its needs and still comply with FCC regulations.[1]

On April 13, 2001, Paxson sent a letter to TCCM demanding the repayment of the Promissory Note including the $800,000 principal amount, accrued interest at the prime rate through the maturity date and default interest at the rate of eighteen percent for the period commencing after the maturity date. Paxson subsequently sent another demand letter on May 24, 2001 after TCCM failed to make any payments as required by the Promissory Note.

On February 15, 2002, Paxson filed an action in the Superior Court of the District of Columbia against TCCM alleging that TCCM had failed to pay the Promissory Note when it became due. On March 18, 2002, TCCM filed its answer and counterclaims.[2] On April 9, 2004, Paxson moved for summary judgment with respect to the non-payment of the Promissory Note and dismissal of TCCM's counterclaims as unripe for consideration based on the FCC's inaction regarding the application for the Channel 18 construction permit. The trial judge heard oral arguments from the parties on May 20, 2004 and issued a final order on September 2, 2004 granting Paxson's motion for summary judgment and dismissing TCCM's counterclaims without prejudice because, without final action by the FCC, they were not ready for final adjudication. The trial judge denied TCCM's motion to amend its order on September 27, 2004.

TCCM also filed a third-party complaint against the law firm of Dow, Lohnes & Albertson, PLLC and three of its attorneys, John R. Feore, Michael D. Basile, and Scott S. Patrick (collectively "DLA") for malpractice in connection with DLA's role in the transaction involving TCCM and Paxson, which included among other tasks, the preparation of the Promissory Note.[3] During discovery, DLA opposed TCCM's requests for answers to interrogatories and documents citing attorney-client privilege. The trial judge, with some reservation, denied TCCM's pre-trial motion to compel discovery. DLA filed two motions for summary judgment asserting that TCCM's failure to provide an expert wit-

1. On May 15, 2001, the parties filed another amendment with the FCC naming Channel 18 as the proposed substitute for the original Channel 61.

2. TCCM raised four counterclaims. In the first two counterclaims, TCCM argued that it should be granted declaratory judgment because: (1) it had performed all of its obligations to Paxson under the terms of the Promissory Note; and (2) Paxson had failed to actively prosecute the television station application before the FCC. TCCM also asserted that Paxson was in breach of contract because it had failed to actively prosecute the application and then demanded repayment of the Promissory Note. Finally, TCCM alleged that Paxson had committed a breach of fiduciary duty by substituting Channel 18, a digital channel, for the original Channel 61 which was an analog station, thus devaluing the worth of the application and then abandoning the application.

3. TCCM later voluntarily dismissed its claims against Mr. Patrick with prejudice, thus removing him from this suit.

ness was fatal to its malpractice claims. The judge denied both motions and, sua sponte, severed the third-party claims for a separate trial.

A non-jury trial was held on September 29–30, 2003. At the close of TCCM's evidence, DLA moved for judgment pursuant to Super. Ct. Civ. R. 52(c). After hearing argument from both parties, the judge granted DLA's motion because TCCM did not: (1) offer expert testimony to establish the standard of care required to prove negligence; and (2) demonstrate that it had suffered any damages. The judge issued an order dismissing TCCM's complaint against DLA on October 7, 2003. This timely appeal followed.

## II.

## SUMMARY JUDGMENT

### A. *Standard of Review*

■ "Summary judgment is appropriate only when the record, viewed in the light most favorable to the non-moving party, establishes that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Taylor v. Akin, Gump, Strauss, Hauer & Feld,* 859 A.2d 142, 146 (D.C.2004) (internal quotations and citations omitted). Any inferences that can be reached from subsidiary facts are resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This court applies "the same substantive standard as the trial court" and "conduct[s] an independent review of the record." *Taylor,* 859 A.2d at 146.

### B. *Discussion*

TCCM asserts the trial court erred in granting summary judgment to Paxson because: (1) the Letter Agreement and the Settlement Agreement modified the maturity date of the Promissory Note; (2) the Promissory Note was unconscionable; (3) Paxson breached its implied duty of good faith and fair dealing by seeking repayment of the Promissory Note; and (4) Paxson waived its right to demand repayment of the Promissory Note by failing to withdraw from the FCC proceedings for award of the construction permit.

### 1. *Modification of the Maturity Date of the Promissory Note*

■ TCCM argues that Paxson was not entitled to collect on the Promissory Note because its two-year term was inconsistent with the terms of the Settlement Agreement, an agreement related to TCCM's acquisition of the construction permit rights for Paxson. The Settlement Agreement provided that the parties, TCCM and the two other applicants for Channel 61, could terminate the agreement within three years from its date of execution if the FCC had not issued a final order granting TCCM's application for the construction permit. To support its position that the Settlement Agreement was a defense to its failure to pay the Promissory Note, TCCM relies on provisions of the Uniform Commercial Code, adopted by the state of Florida. The relevant code provision states:

> Subject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified *by a separate agreement of the obligor and a person entitled to enforce the instrument,* if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. To the extent an obligation is modified, supplemented, or nullified

by an agreement under this section, the agreement is a defense to the obligation. FLA. STAT. ch. 673.1171 (emphasis added).

TCCM's argument has no merit. The Letter Agreement between Paxson and TCCM was executed prior to the execution of the Promissory Note and the Settlement Agreement and thus never referenced either of these documents. Although Section 3 of the Promissory Note required all principal and interest to be "prepaid" if the Settlement Agreement "is terminated for any reason or [ ] if it becomes reasonably unlikely that the construction permit ... will be issued" to TCCM or Paxson (as the successor applicant), nothing in that language altered the plain terms of the note requiring repayment of the loan amount on the "Maturity Date," January 29, 2000. In other words, the maturity date was not subject to modification *unless* the conditions of Section 3 came into play and required "prepayment" of the entire outstanding amount.[4] Further, as to the Settlement Agreement itself, Paxson was not a party to the Settlement Agreement. Because TCCM and Paxson did not execute a separate agreement that modified the terms of the Promissory Note, the unambiguous terms of the promissory note must be enforced. *See Medical Ctr. Health Plan v. Brick,* 572 So.2d 548, 551 (Fla.Dist.Ct.App.1990) (holding that "a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract").

2. *Unconscionability*

▆▆▆ Next, TCCM asserts that the Promissory Note is unconscionable be-

cause it must repay the principal and interest now even though Paxson still has the right to receive the construction permit if the FCC issues such an order. "Under Florida law, a contract may be found unconscionable and therefore unenforceable if the court determines that it is both substantively and procedurally unconscionable." *Brasington v. EMC Corp.,* 855 So.2d 1212, 1217–18 (Fla.Dist.Ct.App. 2003). "To determine whether a contract is substantively unconscionable, a court must look to the terms of the contract, itself, and determine whether they are so outrageously unfair as to shock the judicial conscience." *Gainesville Health Care Ctr., Inc. v. Weston,* 857 So.2d 278, 284–85 (Fla. Dist.Ct.App.2003) (internal quotations and citations omitted). "[T]he procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Brasington,* 855 So.2d at 1218 (internal quotation and citation omitted).

The Promissory Note provided that TCCM would borrow $800,000 and could repay the note at any time prior to its two-year maturity date with interest accruing at the prime rate as published in the WALL STREET JOURNAL. There is nothing "outrageously unfair" about the straightforward terms of this document. While arguably, TCCM and Paxson were working under a very tight schedule in order to accomplish this transaction prior to a January 31, 1998 deadline imposed by FCC requirements, the record indicates that C.E. Feltner, who signed the Promissory Note on behalf of TCCM in the capac-

---

4. The Promissory Note also provided for its modification but only via a writing signed by Paxson. TCCM has not cited to any such written modification of the terms of the Promissory Note executed by Paxson.

We need not and do not reach the question, whether the promissory note in this instance was a negotiable instrument as defined in the Uniform Commercial Code.

ity of Chairman and Assistant Secretary, was a sophisticated businessman. Mr. Feltner testified that he had read the document and discussed it with his attorneys, DLA and Vincent Pepper, Esq. prior to signing it. Accordingly, we conclude that the Promissory Note is not substantively or procedurally unconscionable.

### 3. *Duty of Good Faith and Fair Dealing*

TCCM contends that Paxson breached its duty of good faith and fair dealing by demanding repayment of the Promissory Note while Paxson maintained its right to receive the construction permit, if granted by the FCC, under the terms of the Letter Agreement. "Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract." *Insurance Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So.2d 1232, 1234 (Fla.Dist.Ct.App.2001). The imposition of this covenant is, however, restricted to limited circumstances. This covenant "should not be invoked to override the express terms of the agreement between the parties." *Id.* Nor can this covenant be used unless there is "an allegation that an express term of the contract has been breached." *Id.* TCCM has not asserted that Paxson has breached an express term of the Promissory Note. Instead, it attempts to rely on the implied covenant of good faith and fair dealing to do precisely what is prohibited—override the express repayment terms of the Promissory Note. Thus TCCM's argument is unpersuasive.

### 4. *Waiver of Right to Demand Repayment*

By claiming that Paxson has failed to aggressively petition the FCC to grant the application or withdraw from the proceedings, TCCM asserts that such conduct constituted a waiver of Paxson's right to demand repayment of the Promissory Note. There is no language in the four corners of the Promissory Note to support TCCM's claim that any type of action or inaction by Paxson constitutes a waiver unless it is "in writing, signed by [Paxson] and then only in the specific instance and for the specific purpose for which given." The terms of the Promissory Note further provide that "[n]o failure or delay on the part of [Paxson] in exercising any right, power or remedy hereunder shall operate as a waiver . . . ." Thus, in accordance with the express terms of the Promissory Note, Paxson's conduct with regards to the FCC proceeding did not constitute a waiver of its right to repayment.

### III.

### TRIAL

TCCM claims that the trial judge erred when he concluded that TCCM failed to establish a prima facie case of professional negligence because it did not offer any expert testimony concerning the applicable standard of care or the types of actions that would constitute a breach of that standard of care. TCCM further asserts that he erred when he found that TCCM failed to prove that it suffered any damages as a result of DLA's conduct. Finally, TCCM claims that the trial judge erred when it denied TCCM's motion to compel discovery of certain information.[5] Of course "[w]e review only

---

5. TCCM's failure to designate relevant portions of the record prevents us from reaching the merits of this claim. Rule 10 provides:

(a) *Composition of the Record on Appeal.* The following items constitute the record on appeal:
(1) the original papers and exhibits filed in the Superior Court;

for abuse of discretion and reverse only where the court's findings of fact and conclusions of law are clearly erroneous." *Williams v. Washington Hosp. Ctr.*, 601 A.2d 28, 32 (D.C.1991).

 "In order to prove legal malpractice, a plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of." *Mills v. Cooter*, 647 A.2d 1118, 1123 (D.C.1994). We have adopted "the widely followed rule that, in a legal malpractice action, the plaintiff must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C.1982).

 The trial judge, as the trier of fact, concluded that he could not determine the appropriate standard of care for an attorney in this complex business transaction that involved the acquisition of rights and a transfer of those rights to another entity for a television station construction permit. The transaction involved multiple parties and agreements, and the filing of numerous documents with a regulatory agency, the FCC. These matters were further complicated by testimony that TCCM received legal advice from its own independent counsel during the course of these transactions and that TCCM's own counsel authorized DLA to undertake certain actions on behalf of TCCM.[6] Although the trial judge and the parties were cognizant of the possible impact of the Rules of Professional Conduct, such a violation if one or more existed, does not per se, "constitute a breach of the attorney's common law fiduciary duty to the client." *Griva v. Davison*, 637 A.2d 830, 846–47 (D.C.1994).

(2) the transcript of proceedings, if any; and
(3) a certified copy of the docket entries prepared by the Clerk of the Superior Court.
D.C.App. R. 10(a)(1)-(3). "Consequently, a party challenging any trial court decision bears the burden of presenting this court 'with a record sufficient to show affirmatively that error occurred.' " *Mbakpuo v. Ekeanyanwu*, 738 A.2d 776, 781 (D.C. 1999) (quoting *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982)). TCCM has failed to present us with a copy of Judge Rankin's written order denying the motion or a transcript of a court proceeding where the motion was orally denied. We note also that a trial court's discovery rulings "will not be disturbed on appeal unless there has been an abuse of discretion resulting in prejudice." *Haynes v. District of Columbia*, 503 A.2d 1219, 1224 (D.C.1986). Although TCCM represents that the judge denied its Motion to Compel without providing any explanation, "we cannot base our review of errors upon statements of counsel which are unsupported by [the] record." *Mbakpuo, supra*, 738 A.2d at 781 (internal quotations and citations omitted). Indeed there is nothing in the record before us that supports this claim of error.

6. Vincent Pepper, Esq., counsel to TCCM, testified that he reviewed and discussed the Letter Agreement with DLA before it was executed by TCCM and Paxson. Mr. Feltner, CEO and Chairman of the Board of TCCM, also agreed that this discussion and review occurred. Mr. Feltner further testified that he discussed almost every agreement with Mr. Pepper before executing them, including the Promissory Note. Mr. Pepper testified that he authorized DLA to sign the amendment substituting Channel 50 for Channel 61 after consulting with his client, TCCM, who approved the filing because, otherwise, the proceeding before the FCC would have been terminated. Mr. Feltner, testified that Paxson's law firm [DLA] would represent both parties with respect to the drafting of the Letter Agreement although he was never asked to sign a conflict waiver. Mr. Feltner further testified that he suggested that DLA's offices be used for the negotiations of the Settlement Agreement and the related escrow agreement and that DLA assist with the preparation of those documents.

Accordingly, we conclude that the trial judge did not abuse his discretion in finding that TCCM needed to provide expert testimony to establish a prima facie case of legal malpractice.[7]

## IV.

### COUNTERCLAIMS

 On appeal, TCCM argues that the trial court erred when it failed to grant summary judgment based on its claim that Paxson has committed an anticipatory breach of the Letter Agreement and that it is entitled to offset the $800,000 owed to Paxson under the terms of the Promissory Note based on the equitable defense of set-off since Paxson is potentially liable to TCCM for $5,950,000 if the FCC issues a final order granting Paxson the rights to the construction permit for the Mobile television station. TCCM, however, did not plead either of these claims in its original counterclaims. See note 2, *supra.* "Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal." *Cannon v. Igborzurkie,* 779 A.2d 887, 888 (D.C.2001) (internal quotations and citations omitted). Moreover, TCCM's counterclaims are not ripe for review since the FCC has not issued a final order in this matter. *See Metropolitan Baptist Church v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 718 A.2d 119, 130 (D.C.1998) (concluding "that an adversary system can best adjudicate real, not abstract, conflicts") (internal quotations and citations omitted); *Smith v. Smith,* 310 A.2d 229, 231 (D.C.1973) (holding that a trial court has no power "to render an opinion upon an issue that may or may not arise"). Accordingly, this court has no authority to address TCCM's counterclaims.

 TCCM also argues that because the FCC issued an order[8] approximately two months after Judge Rankin issued a final order granting Paxson's motion for summary judgment and dismissing TCCM's counterclaims without prejudice as unripe, this matter must be reversed and remanded to the trial court for entry of judgment in favor of TCCM. Of course, this court is precluded from considering any issues that are outside the record that were not pending before the Superior Court *See* D.C.App. R. 10(a)(1), *supra* note 5. This would include any events that occurred after judgment was entered and only demonstrates that Judge Rankin's dismissal of TCCM's counterclaims as unripe was proper.

Accordingly the judgment of the trial court is affirmed.

*So ordered.*

---

**7.** Because TCCM has not established a prima facie case of legal malpractice, there is no reason for us to consider the issue of whether TCCM suffered any damages.

**8.** This November 5, 2004 order added Channel 18 to the digital channels allotted to Mobile, Alabama without granting the rights to the channel to any particular entity and directed Paxson to submit a minor change application within forty-five days substituting Channel 18 in lieu of Channel 61.