# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 7, 2016　　　Decided December 16, 2016

No. 14-7144

ANGELENE HARDAWAY AND LENA HARDAWAY,
APPELLANTS

v.

DISTRICT OF COLUMBIA HOUSING AUTHORITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01232)

*Dina B. Mishra*, appointed by the court, argued the cause as amicus curiae in support of appellants. With her on the briefs were *Steven H. Goldblatt*, appointed by the court, and *Sarah McDonough*, Student Counsel.

*Lena Hardaway* and *Angelene Hardaway*, pro se, filed the briefs for appellants.

*Alex M. Chintella* argued the cause for appellee. With him on the brief were *Frederick A. Douglas* and *Curtis A. Boykin*. *Nicola Grey* and *Mashanda Y. Mosley* entered appearances.

Before: ROGERS, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Opinion concurring in part filed by *Circuit Judge* ROGERS.

TATEL, *Circuit Judge*: Appellants Angelene and Lena Hardaway ("the Hardaways") challenge the District of Columbia Housing Authority's ("the Authority") denial of approval for a live-in aide to care for Angelene. That denial, they argue, violates provisions of the Americans with Disabilities Act, 42 U.S.C. § 12132, Rehabilitation Act, 29 U.S.C. § 794, and Fair Housing Act, 42 U.S.C. § 3604(f)(1). The district court dismissed the case on standing and mootness grounds and, in the alternative, granted summary judgment. Because these rulings were erroneous, we reverse. And because the district court abused its discretion in summarily denying the Hardaways' motion to seal certain medical records, we reverse that decision as well.

## I.

Because this case arises from the district court's grant of a motion to dismiss and, in the alternative, summary judgment, we take the factual allegations contained in the complaint as true and draw all reasonable inferences in the Hardaways' favor. *See Information Handling Services, Inc. v. Defense Automated Printing Services*, 338 F.3d 1024, 1029, 1032 (D.C. Cir. 2003). Moreover, we construe those allegations liberally given that the Hardaways filed their complaint pro se. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Under the Department of Housing and Urban Development's (HUD) Housing Choice Voucher Program ("the program"), eligible families receive government

subsidies to pay for "decent, safe, and sanitary housing." 24 C.F.R. § 982.1(a)(1); *see also* 42 U.S.C. § 1437f (authorizing HUD to administer the program). State or local government entities called public housing agencies administer the program using funds HUD provides. 24 C.F.R. § 982.1(a)(1). Once a public housing agency selects a family to participate in the program, it issues that family a voucher based on the family's size. *Id.* § 982.402(a). A family of one, for instance, normally receives a one-bedroom voucher. The program then works in a three-step process: First, the family "select[s] and rent[s] [a] unit that meet[s] program housing quality standards"; second, the public housing agency approves the unit and tenancy; and third, the public housing agency contracts with the unit's owner to make rent subsidy payments on the family's behalf. *Id.* § 982.1(a)(2).

In March 2013, the Montgomery County, Maryland Housing Opportunities Commission ("the Commission") selected Angelene Hardaway to participate in the program. Based on a medical form provided by Angelene's doctor, the Commission determined that Angelene has a disability and requires a live-in aide to care for her. Because HUD regulations mandate that "[a]ny live-in aide (approved by the [public housing agency] to reside in the unit to care for a family member who is disabled . . .) must be counted in determining the family unit size," the Commission issued Angelene a two-bedroom voucher, rather than a one-bedroom voucher. *Id.* § 982.402(b)(6). Lena Hardaway, Angelene's sister, served as Angelene's live-in aide.

Two months after being selected for the program, Angelene decided to move to the District of Columbia. Federal law requires that program vouchers be portable: once a family secures voucher assistance in one jurisdiction, it has a right to receive such assistance if it moves to another. *See*

42 U.S.C. § 1437f(r)(1); 24 C.F.R. § 982.353(b). Relying on this guarantee, Angelene obtained a two-bedroom voucher from the Authority on June 6, 2013, and Angelene and Lena moved into a two-bedroom apartment in the District three weeks later.

The Hardaways were soon met with disturbing news. On July 9, they received a letter from the Authority revoking Angelene's right to a live-in aide and, in turn, her legal entitlement to a two-bedroom voucher. Two days later, the Hardaways filed a complaint in district court seeking both damages and injunctive relief. In the complaint, they alleged that the Authority's denial of Angelene's request for a reasonable accommodation of her disability violated provisions of the Americans with Disabilities Act, 42 U.S.C. § 12132, Rehabilitation Act, 29 U.S.C. § 794, and Fair Housing Act, 42 U.S.C. § 3604(f)(1). The Hardaways also sought a temporary restraining order and moved to seal their complaint, all medical records, and all "nondispositive materials." *Hardaway v. DCHA*, No. 13-1232, ECF No. 8, at 1 (D.D.C. Aug. 29, 2013). The district court denied both motions. *See Hardaway*, No. 13-1232, ECF No. 5 (D.D.C. Aug. 9, 2013) (denying temporary restraining order); *Hardaway*, No. 13-1232, ECF No. 10 (D.D.C. Sept. 5, 2013) (denying motion to seal).

On September 26, while the Hardaways' case was pending, the Authority sent another letter reaffirming that Angelene's "request for a live-in aide has been denied" on the ground that "there was no documentation submitted with [her] request to support [her] need for a reasonable accommodation." At the same time, however, the letter stated that "this determination will not reverse the decision of the [program] to provide [Angelene] with a two (2) bedroom voucher."

Shortly after sending this letter, the Authority moved to dismiss or for summary judgment, asserting that the Hardaways' complaint failed to state a claim for which relief could be granted and that their claims were moot. The district court granted the Authority's motion, holding on its own accord that the Hardaways lacked standing because they had alleged no injury in fact. "Nothing in plaintiffs' Complaint," the court reasoned, "indicates that the [Authority] denied [them] access to or participation in the [program] because of Angelene's disability." *Hardaway*, No. 13-1232, ECF No. 18, slip op. at 4 (D.D.C. July 30, 2014). And because, in the court's view, the Authority's September 26 letter showed that it had "acquiesced to plaintiffs' desired living arrangement," the court determined that the Hardaways had suffered no cognizable harm. *Id.* at 5. For that reason, too, it concluded that their claims were moot. *Id.* n.3. The court dismissed the case with prejudice, and the Hardaways appealed. In considering the issues before us, we have been ably assisted by a court-appointed amicus.

## II.

We review dismissals for lack of Article III jurisdiction de novo. *See LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011) (standing); *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (mootness). We begin with standing and then turn to mootness.

## A.

Article III standing requires, among other things, an injury in fact, which is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). As the Supreme Court has emphasized, when the plaintiff is herself "an object of [government] action[,] . . . there is ordinarily little question that the action . . . has caused [her] injury." *Lujan*, 504 U.S. at 561–562. Indeed, this court has explained that standing is "self-evident" when the plaintiff is herself "the object of the challenged agency action." *Fund for Animals v. Norton*, 322 F.3d 728, 734 (D.C. Cir. 2003). Critically for this case, the standing inquiry focuses on whether the plaintiff has demonstrated an injury "at the outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 167, 180 (2000); *see also Wheaton College v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012) ("[S]tanding is assessed at the time of filing . . . .").

Applying these principles, we think it obvious that Angelene has demonstrated injury in fact. The Hardaways' complaint alleges that Angelene received a July 9 letter from the Authority denying her "request for reasonable accommodation." Construed liberally, the complaint clearly refers to a rescission of Angelene's live-in aide approval. By revoking that approval, the Authority extinguished Angelene's legal entitlement to a two-bedroom voucher because only approved live-in aides may count toward family-unit size. *See* 24 C.F.R. § 982.551(h)(2) ("No other person [i.e., nobody but members of the assisted family] may reside in the unit (except for a . . . live-in aide . . . .)."); *id.* § 982.551(h)(4) ("If the [public housing agency] has given approval, . . . a live-in aide may reside in the unit."). As a result, Angelene instantly became vulnerable to losing both her round-the-clock care and her home. The Hardaways filed their complaint two days after receiving the letter.

At the outset of the litigation, then, the Authority had just stripped Angelene of a government benefit to which she

claimed a legal entitlement. Because Angelene was thus the "object" of government action, there should have been "little question" that she suffered cognizable injury. *See Lujan*, 504 U.S. at 561. Said otherwise, by rescinding Angelene's claimed statutory entitlement to a live-in aide and two-bedroom voucher, the Authority's July 9 letter "inva[ded] . . . a legally protected interest," and that invasion was "concrete and particularized" because it denied her care and could well have led to her eviction. *See Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560); *see also Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442, 446 (9th Cir. 1994) (threatened eviction is concrete and particularized harm). This analysis shows why plaintiffs have long been empowered to challenge the rescission of government benefits in federal court. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Goldberg v. Kelly*, 397 U.S. 254 (1970); *see also Americans for Safe Access v. DEA*, 706 F.3d 438, 445–46 (D.C. Cir. 2013) (holding that injury in fact was "clearly establish[ed]" where a veteran challenged a Veterans Administration policy denying him a benefit to which he claimed an entitlement).

The district court confused standing and mootness. In granting the Authority's motion, the district court relied on the Authority's September 26 letter reaffirming the live-in aide denial but "acquiesc[ing]" to Angelene's retention of a two-bedroom voucher. *Hardaway*, No. 13-1232, ECF No. 18, slip op. at 5. But, as noted earlier, the standing inquiry trains attention on whether a plaintiff has alleged cognizable injury "at the outset of the litigation." *Friends of the Earth*, 528 U.S. at 180. The mootness inquiry, by contrast, asks whether events subsequent to the filing of the complaint "have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *American Bar Association v.*

*FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011). Because the Authority sent the September 26 letter *after* the Hardaways filed their complaint, it should have played no role whatsoever in the district court's standing analysis. That analysis should have turned exclusively on the July 9 letter, in which the Authority rescinded Angelene's live-in aide approval.

The Authority argues that even if we focus on the time of filing, the Hardaways' complaint alleges no injury. Yet, as we have explained, when construed liberally, the complaint alleges a rescission of Angelene's live-in aide approval through its reference to the Authority's "denial of participant request for reasonable accommodation." And without such approval, Angelene lacked a legal entitlement to a two-bedroom voucher. At the pleading stage, a plaintiff's general allegation that the government has denied or revoked a benefit suffices to show injury in fact.

With injury in fact established, the other two requirements for standing—causation and redressability, *see Lujan*, 504 U.S. at 560–61—flow easily: Angelene's loss of a statutory entitlement traces directly to the Authority's July 9 letter and would be redressed were we to direct the Authority to officially approve her live-in aide request. Because we conclude that Angelene has standing to bring this action, we need not reach amicus's alternative contention that Lena has standing to sue under the Fair Housing Act. *See Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996) ("For each claim, if . . . standing can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim.").

**B.**

Having determined that Angelene had standing at the time of filing, we turn to the question of mootness. As explained already, whereas standing is measured by the plaintiff's "concrete stake" at the outset of the litigation, mootness depends on whether the parties maintain "a continuing interest" in the litigation today. *See Laidlaw*, 528 U.S. at 191–92. Pointing to the Authority's September 26 letter—which stated that it would "not reverse the decision of the [program] to provide [Angelene] with a two (2) bedroom voucher"—the district court saw no such continuing interest. Again, we disagree.

Although the Authority's September 26 letter refrained from revoking Angelene's two-bedroom voucher, it expressly reaffirmed the denial of her live-in aide request. As a result, Angelene is *legally entitled* to only a one-bedroom voucher. The Authority's permission for Angelene to keep a two-bedroom voucher thus amounts to an act of administrative grace, and it retains authority to revoke that voucher at any time. Indeed, as amicus points out, by permitting Angelene to keep a two-bedroom voucher after denying her live-in aide request (and without granting an official exception based on Angelene's handicap, *see* 24 C.F.R. § 982.402(b)(8)), the Authority appears to be violating HUD regulations, which allow only approved live-in aides to reside with an assisted family, *see id.* § 982.551(h)(2) ("No other person [i.e. nobody but members of the assisted family] may reside in the unit (except for a . . . live-in aide . . . .)."); *id.* § 982.551(h)(4) ("If the [public housing agency] has given approval, a . . . live-in aide may reside in the unit."). Angelene therefore continues to suffer the same injury that she sustained at the outset of the litigation: denial of a legal entitlement to a two-bedroom

voucher, which renders her perpetually vulnerable to having that voucher revoked. Consequently, her claims are not moot.

Even if the Authority could lawfully allow Angelene to retain the two-bedroom voucher and assured us that it would not withdraw that accommodation in the future, Angelene's claim would still present a live controversy. For a case to be rendered moot through the defendant's voluntary cessation of a challenged practice, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Association*, 393 U.S. 199, 203 (1968)). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.*

Here, the Authority has failed to provide any evidence that it will refrain from revoking Angelene's two-bedroom voucher in the future. Instead, attempting to foist its burden onto the Hardaways, it argues that *they* have offered no evidence to prove that the Authority will rescind the voucher. Appellee's Br. 19. This tactic ignores the Supreme Court's command that "the party asserting mootness" must carry the "heavy burden" of proving mootness through cessation. *Laidlaw*, 528 U.S. at 189. At bottom, the Authority's argument amounts to a meager "promise not to" revoke the voucher. *See Kifafi v. Hilton Hotels Retirement Plan*, 701 F.3d 718, 725 (D.C. Cir. 2012). Unfortunately for the Authority, courts never permit parties to deprive them of jurisdiction through a mere "wave of [the] hand." *Id.* at 724.

## III.

This brings us, finally, to amicus's argument that the district court erred in denying the Hardaways' motion to seal

their complaint, all medical records, and all non-dispositive materials. We review that denial for abuse of discretion. *EEOC v. National Children's Center, Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996).

"The starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings." *Id.* That said, in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), we set forth six factors "that might act to overcome this presumption":

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*National Children's Center*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22).

In this case, the district court offered scarce explanation for its denial of the Hardaways' motion. It failed to consider the *Hubbard* factors, simply stating that: "The disability is a critical fact that must be alleged and proved in order for plaintiffs to prevail. It alone is not information so sensitive that all pleadings, discovery materials, and non-dispositive motions must be filed under seal." *Hardaway*, No. 13-1232, ECF No. 10, slip op. at 2. The court also incorrectly assumed that "none of the documents filed in this action is a medical record," *id.* n.1, when in fact a form containing a doctor's description of Angelene's disability had been docketed, *see*

*Hardaway*, No. 13-1232, ECF No. 1 (D.D.C. Aug. 9, 2013). By failing to weigh the six relevant factors and mischaracterizing the record, the district court abused its discretion. *See National Children's Center*, 98 F.3d at 1410 ("Without a full explanation, we are unable to review the district court's exercise of its discretion.").

Because we are remanding to the district court, we could instruct it to consider the *Hubbard* factors and decide whether to seal the relevant documents. But given the clarity of the issue, we think it best to weigh the factors ourselves. The public has no need for access to documents that describe Angelene's disability; Angelene, the plaintiff, has objected to their disclosure; and she possesses a strong privacy interest in keeping the details of her disability confidential. For its part, the Authority conceded at oral argument that it has no objection to sealing or redacting Angelene's medical documents. Oral Arg. Rec. 34:33–39. As a result, the single medical form currently in the record, and all future medical records describing Angelene's disability, must be sealed. In addition, descriptions of Angelene's disability contained in any filing—including appellate briefs and appendices—should be or remain redacted. Contrary to the concurrence's suggestion, nothing in this opinion limits the district court's discretion in determining whether to seal current or future documents unrelated to Angelene's disability.

## IV.

For the foregoing reasons, we reverse the district court's grant of the Authority's motion to dismiss or for summary judgment, as well as its denial of the Hardaways' motion to seal as it pertains to medical records and descriptions of Angelene's disability. We also grant, in part, amicus's motion to seal appellate briefs and appendices: all

descriptions of Angelene's disability should be or remain redacted. We remand for further proceedings consistent with this opinion.

*So ordered.*

ROGERS, *Circuit Judge*, concurring in part. I join the court's opinion save in two respects.

First, I concur in holding that appellant Angelene Hardaway has standing under Article III of the Constitution, and that appellants' claims arising out of denials of requests for accommodation under the Housing Choice Voucher Program – a federally funded program administered locally by the D.C. Housing Authority, *see* 42 U.S.C. § 1437f(b)(1) – are not moot.

Due to her disability, Angelene had received approval in February 2013 from Montgomery County, Maryland for her sister Lena to serve as her live-in aide, entitling Angelene to a two-bedroom housing voucher. When she subsequently moved to the District of Columbia, she was issued a two-bedroom voucher by the D.C. Housing Authority pursuant to the voucher program's portability requirements. *See id.* § 1437f(r)(1); 24 C.F.R. §§ 982.353(b), 982.355. A month later, however, the Authority, by letter of July 9, 2013, denied Angelene's request for a live-in aide. *See* Compl. ¶ 13. That letter provided grounds to find that rescission of live-in aide approval jeopardized Angelene's entitlement to a two-bedroom apartment under the voucher program. *See* 28 C.F.R. § 982.402(b)(7). This was sufficient to establish the requisite injury-in-fact under Article III, and Angelene otherwise meets the causation and redressibility requirements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61(1992).

The Authority's September 26, 2013, letter, which affirmed the denial of a live-in aide but did not rescind the two-bedroom voucher, did not moot appellants' claims. *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013). That letter did not cite authority under which Angelene remained entitled to a two-bedroom unit once the Authority had disapproved her live-in aide. Neither did it indicate that Lena Hardaway qualified as a family member under 24 C.F.R. § 982.551(h)(2). Nor did it

otherwise establish that Angelene's legal entitlement to a two-bedroom apartment was unaffected by the live-in-aide denial. It thus appears that the Authority's September 26 letter amounts to nothing more than "an act of administrative grace." Op. at 9.

Because it is unnecessary, at this stage of the proceedings, for the court to decide more, and the matter has not been fully briefed, however, I would defer opining on whether appellants faced eviction or whether the Authority could lawfully acquiesce to appellants remaining in the two-bedroom apartment.

Second, I concur in holding that the district court abused its discretion in denying appellants' motion to seal because it failed to apply the factors in *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980), and erred in finding no medical record had been filed, *see* Order at 2 n.1 (Sept. 5, 2013). Appellants moved to seal in part because public disclosure of Angelene's medical records relating to her disability could adversely affect her employment prospects. Mot. to Seal at 2. In the district court, the Authority did not dispute her assertion about adverse impact on her employment prospects, and on appeal expressed no objection to such sealing, Oral Arg Rec. 34:33–39. Regardless, notwithstanding the strong presumption that the public shall have access to judicial proceedings, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980), I concur in holding that Angelene's medical records relating directly to her disability that are currently in the record on appeal, and the redacted portions of the joint appendix on appeal, appellee's brief, and the opening brief filed on her behalf by amicus, should be sealed.

As regards additional sealing, the court has decided to opine regarding certain documents that may be presented in future proceedings.  Op. at 12.  I would leave that question to the district court to decide, in the first instance, upon applying the *Hubbard* factors, and taking into account appellants' *pro se* status.  *See* Order at 2 n.1 (Sept. 5, 2013).  It is not inconceivable that future distinctions may be appropriately drawn, even as to types of medical records.