*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

### No. 19-CV-1032

IN RE: THE BRIGHT IDEAS COMPANY, INC., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(CAT-5718-19)

(Hon. Anthony C. Epstein, Reviewing Judge)

(Argued October 26, 2021                    Decided November 10, 2022)

*John A. Galbreath* for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General at the time, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time, *Caroline S. Van Zile*, Principal Deputy Solicitor General at the time, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellee.

Before BECKWITH, EASTERLY, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: This appeal, while superficially about a $100 speeding ticket, raises far more important stakes about an institutional litigant's strategic attempts to evade this court's review. After successfully defending a $100 speeding ticket through two layers of agency review and before the Superior Court, the District of Columbia asked this court to summarily affirm and uphold the ticket.

When we denied that motion, and instead asked for supplemental briefing and indicated we would hear oral argument in the matter—preliminary indications that the challenge to the ticket may have some merit—the District "voided" the ticket, tried to refund the already-paid fine, and now urges us to dismiss the appeal as moot.

We decline that invitation. Appellant, the Bright Ideas Company, has raised constitutional and regulation-based challenges to how the District enforces its traffic laws. The District's decision to void its ticket at the twenty-fifth hour—in this rare challenge to a speeding ticket that persists all the way to this court—has not rendered those challenges moot. The voluntary cessation doctrine instructs that one party's "voluntary cessation of a challenged practice does not moot a case unless 'subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). We have no such assurance here, as the District has given us no reason to think it has changed the enforcement practices Bright Ideas now challenges. Rather, the District has made it reasonably clear that it has not altered its challenged enforcement practices at all and that its one-off act of voiding this ticket was done only to avoid a potential precedent-setting loss. This court will not indulge such strategic attempts to evade review,

particularly where the District already took a bite at the apple when it unsuccessfully sought summary affirmance.

On the merits, we agree with the Bright Ideas Company that the District misapplied its traffic regulations in upholding the issued citation. When the District cites a driver for violating a posted speed limit, as here, a viable defense is that the posted speed limit sign is not "sufficiently legible to be seen by an ordinarily observant person." 18 D.C.M.R. § 2000.5. The District's contrary view, that whenever the posted limit is illegible, it may always resort to enforcing the so-called default speed limit, *see* 18 D.C.M.R. § 2200.6, is not a reasonable interpretation of the pertinent traffic regulations. We therefore reverse the agency's order upholding the citation.

## I.

This case stems from a ticket issued after an automated traffic camera photographed a car registered to Bright Ideas speeding on the 2900 block of Military Road NW. Bright Ideas is a Maryland company whose sole proprietor was driving the vehicle and would later represent his company as counsel throughout the legal proceedings, including in this appeal. The ticket listed the car's speed as 36 mph, the "Posted Speed" as 25 mph, the infraction as "Speed 11-15" mph over the limit,

and the fine as $100. Bright Ideas challenged the ticket before a Department of Motor Vehicles Adjudication Services Hearing Examiner, arguing that there was "no clear signage of the speed limit" on that stretch of road, where the lone speed limit sign was poorly positioned and partially obscured by tree branches. The hearing examiner upheld the ticket, reasoning that "[i]n the District of Columbia, if you do not know what the posted speed limit is, the law requires you to travel at 25 miles per hour." *See* 18 D.C.M.R. § 2200.6 (2019).

Bright Ideas appealed to the Department of Motor Vehicles' Traffic Adjudication Appeals Board, which also upheld the ticket. In its decision, the Appeals Board considered two traffic regulations. First, it cited 18 D.C.M.R. § 2200.2 for the proposition that the 25 mph posted speed limit on this stretch of Military Road was set by the Mayor and "determined to be safe and reasonable under the conditions found to exist at the location." Second, and in the alternative, it looked to 18 D.C.M.R. § 2200.6, which at the time provided that "[o]n all streets and highways, unless otherwise designated in accordance with [18 D.C.M.R.] § 2200.2, the maximum lawful speed shall be twenty-five miles per hour (25 mph)."[1]

---

[1] In June 2020, this regulation was amended to reduce the default speed limit to 20 mph. *See* 67 D.C. Reg. 7539 (June 12, 2020) (emergency rulemaking); 67 D.C. Reg. 11238 (Sept. 25, 2020) (final regulation).

Echoing the hearing examiner's rationale, the unanimous three-member Appeals Board reasoned that if Bright Ideas' driver "did not observe a speed limit sign stating otherwise, he should have observed the 25 mph [default] limit under the regulations."

Bright Ideas next petitioned the Superior Court for leave to challenge the Appeals Board's decision. *See* D.C. Code § 50-2304.05. In its petition, the company asserted for the first time that the District was engaged in an unconstitutional practice of "conduct[ing] speed camera surveillance and ticketing in locations where speed limits are not reliably posted, and where drivers would not reasonably expect the speed limit to be just 25 mph." Bright Ideas contended that when drivers then challenge the speed limit as improperly posted, the District "sidesteps the protests by stating that it does not matter whether the speed limit is properly posted, because any street in the District has a speed limit of just 25 mph if not posted" under 18 D.C.M.R. § 2200.6. The company argued that this scheme violated its due process rights because, for speed limits, fair notice "means reliably posting those limits so that drivers can regulate their behavior accordingly."

The Superior Court denied Bright Ideas' petition, finding that the "adequacy of the signage" was "not legally relevant." Citing the default speed limit, *see* 18

D.C.M.R. § 2200.6, it reasoned that if a speed limit sign "did not notify Bright Ideas of the speed limit," District law "imposed a 25-mph speed limit." The court likewise rejected Bright Ideas' constitutional arguments, concluding that drivers have sufficient notice of the District's default speed limit.

Bright Ideas now appeals to this court. After Bright Ideas filed its opening brief, the District asked us to summarily affirm the trial court's order. *See Carl v. Tirado*, 945 A.2d 1208, 1209 (D.C. 2008) (summary affirmance is proper when the movant shows that "the basic facts are both uncomplicated and undisputed, and that the lower court's ruling rests on a narrow and clear-cut issue of law"). We denied the District's motion and directed it to file a supplemental brief concerning the constitutional issues raised by Bright Ideas. We also informed the parties that the case would be scheduled for argument on the regular calendar.[2]

---

[2] This court's internal operating procedures explain that cases may be placed on the summary calendar, which means they will be submitted without oral argument unless otherwise ordered, or on the regular calendar, which means we will hear argument unless otherwise ordered. D.C. App. I.O.P. VI. A minority of appeals are placed on the regular calendar, which is reserved for cases where it appears that "the decisional process will be significantly aided by oral argument," after considering factors like whether the case raises "an issue of first impression," whether "an existing rule of law may be criticized or questioned," and whether "a substantial issue as to the constitutionality of a statute may be raised." *Id.* at VI-B.

The District did not submit the supplemental brief as directed. Instead, after seeking and receiving multiple extensions to file, it notified this court that it was "taking steps to provide the relief [Bright Ideas] request[ed]" by commencing the process to void the speeding ticket and refund Bright Ideas the already-paid $100 fine. The District then filed a motion to dismiss the appeal as moot, stating that it had provided "all the relief available to the Company in this action." Bright Ideas opposed the motion, arguing that the District was attempting to "sidestep" judicial review of its practices.[3]

We now consider the District's motion to dismiss this appeal as moot, and because we conclude the appeal is not moot, we address the merits of Bright Ideas' challenge to the speeding ticket.

## II.

We begin with the question of mootness. "A case is moot when the legal issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome." *Cropp v. Williams*, 841 A.2d 328, 330 (D.C. 2004) (citation

___

[3] Bright Ideas further stated that it never received a refund check from the District, a claim renewed at oral argument. We need not resolve this factual dispute, however, as the status of the District's refund check does not affect our analysis.

omitted).  Thus, while an appeal is pending, "an event that renders relief impossible or unnecessary also renders that appeal moot."  *Settlemire v. D.C. Off. of Emp't Appeals*, 898 A.2d 902, 905 (D.C. 2006) (quoting *Vaughn v. United States*, 579 A.2d 170, 175 n.7 (D.C. 1990)).[4]

There are several important exceptions to this rule, however.  As relevant here, "it is well established that 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case.'"  *Mbakpuo v. Ekeanyanwu*, 738 A.2d 776, 782 (D.C. 1999) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).  This exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).  A party claiming mootness because of its voluntary cessation of conduct faces "the heavy burden" of demonstrating that its challenged activity will not resume, so that "there is no reasonable expectation that the wrong

---

[4] The District's courts are Article I courts and are not bound by Article III's strictures to resolve only "cases" or "controversies."  *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 181 (D.C. 2021).  While we thus enjoy some "flexibility in regard to mootness not possessed by the federal courts," we nevertheless hew closely to the jurisdictional decisions of Article III tribunals "to promote sound judicial economy."  *Atchison v. District of Columbia*, 585 A.2d 150, 153 (D.C. 1991) (quoting *District of Columbia v. Walters*, 319 A.2d 332, 338 n.13 (D.C. 1974)).

will be repeated." *Mbakpuo*, 738 A.2d at 783 (quoting *W.T. Grant Co.*, 345 U.S. at 633).

Our bottom-line inquiry under the voluntary cessation doctrine is thus whether the District has carried its burden of making "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (citation omitted). While we have a scarcity of our own precedents elucidating the voluntary cessation doctrine's contours, federal courts of appeals further scrutinize whether the purported cessation "appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction." *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011) ("*NABP*"); *see also Alaska v. U.S. Dep't of Ag.*, 17 F.4th 1224, 1229-30 (D.C. Cir. 2021) (declining to apply voluntary cessation exception to mootness because the appellant "has not argued, nor could it plausibly argue," that appellees "acted in order to manipulate the judicial process"). We agree with those

courts that this is a crucial aspect of the overarching inquiry, and consider it in Part II.B.

## A.

The core of our voluntary cessation inquiry is whether we have sufficient assurances that the District has unambiguously ceased the challenged conduct—i.e., that it has stopped enforcing the default speed limit when there is an otherwise posted, but purportedly illegible, speed limit sign.[5] The reason for this inquiry is

---

[5] One wrinkle in this appeal is that the default speed limit at the time of this citation was the same as the posted speed limit on a supposedly illegible sign. The District now points to that fact for the first time on appeal, arguing that at least in that limited circumstance—when the posted sign and the default speed limit are the same—the District can enforce the default speed limit when the posted sign is illegible. That may be a plausible reading of the relevant regulations, but it is not the one adopted by the hearing examiner or the Appeals Board (or the Superior Court). They instead adopted the sweeping reasoning that whenever a speed limit sign is illegible, the default speed limit applies. Because, with rare exceptions not implicated here, "an administrative order can only be sustained on the grounds relied on by the agency," *Abramson Assocs., Inc. v. D.C. Dep't of Emp't Servs.*, 596 A.2d 549, 554 (D.C. 1991) (quoting *Long v. D.C. Dep't of Emp't Servs.*, 570 A.2d 301, 302 (D.C.1990)), we do not consider this alternative basis for affirmance urged for the first time on appeal. *See Sewell v. Walker*, 278 A.3d 1175, 1177 (D.C. 2022) ("We ordinarily do not consider issues raised for the first time on appeal." (citation omitted)). Under different circumstances we might remand this more nuanced reading of the regulations for the agency's consideration, but here, no party has asked for such a remand, and we see little point in one given the voided ticket and apparently refunded fine.

that without strong evidence that a dispute has come to a complete and permanent end, a court would risk leaving a defendant "free to return to his old ways" when dismissing a case. *Laidlaw*, 528 U.S. at 189 (citation omitted). As the party asserting mootness, the District bears the "heavy burden" of establishing that it has ceased the challenged conduct. *Id.*

In this case, there is no evidence that the District has ceased the challenged conduct. All signals and representations are to the contrary. The District never represented in its pleadings, nor could it represent when pressed at oral argument, that it has undertaken some formal (or even informal) change in its traffic enforcement practices. *Cf. Ragsdale v. Turnock*, 841 F.2d 1358, 1365-66 (7th Cir. 1988) (finding a consistent, albeit unpublicized, policy of non-enforcement sufficient to render a challenge moot). It has not amended the traffic regulations at issue in any relevant way.[6] *Cf. N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1161 (10th Cir. 2019) (finding challenge moot after an agency replaced the challenged regulations). Indeed, the only action the District appears to have taken is to void the lone ticket in this case, an action that it acknowledges it "will not necessarily [do] in future cases." Far from "persuading

---

[6] As noted *supra* note 1, the District has reduced the default speed limit to 20 mph, but that is not material to the issue at hand.

the court that the challenged conduct cannot reasonably be expected to start up again," *Laidlaw*, 528 U.S. at 189 (citation omitted), we are left with the firm impression that the District continues its challenged enforcement practices.

The District makes four arguments in response, none of which is persuasive. First, it stresses that "there is no evidence of any systemic illegality or routine reliance on the default speed limit that could recur." But that places the burden on the wrong party. Because this is a case of voluntary cessation, it is the District's burden to prove that the allegedly wrongful conduct will not recur, not Bright Ideas' to prove that it will. *See Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016) (criticizing a similar argument by the District as "ignor[ing] the Supreme Court's command that 'the party asserting mootness' must carry the 'heavy burden' of proving mootness through cessation" (quoting *Laidlaw*, 528 U.S. at 189)). So long as "there exists some cognizable danger of recurrent violation," it is the District's burden to make it absolutely clear that there will be no such recurrence. *Mbakpuo*, 738 A.2d at 782 (citation omitted). The District's bald assertion that "this is not a legal issue that arises frequently . . . in this Court" fails to provide such

clarity.[7]  And in any case, the danger of recurrence is readily cognizable given the ubiquity with which the District issues automated speeding citations; in just the first half of this fiscal year, the District issued over 600,000 tickets based on images captured by traffic cameras, including 4,866 to drivers captured by the same camera as Bright Ideas (i.e., eastbound on the 2900 block of Military Road NW).[8]  Within this panopticon, speeding tickets have become a question of "when" and "how often," not "if," for many of the District's drivers.[9]  Some of them are bound to complain about a posted speed limit's legibility.

This appeal to uncertainty falls especially flat coming from the District, which is uniquely positioned to represent what its practices are, whether they have changed, and how frequently it enforces its traffic regulations in the manner now under attack.

---

[7] The time and resources necessary to raise a challenge to a civil traffic infraction all the way to this court are orders of magnitude higher than simply paying the ticket, making such challenges vanishingly rare.

[8] These data were reported to the Council pursuant to D.C. Code § 50-2209.21. *See* District Dep't of Transp., *Automated Traffic Enforcement Semi-Annual Report* 11-12 (Sept. 28, 2022), https://lims.dccouncil.gov/downloads/LIMS/51300/ Introduction/RC24-0222-Introduction.pdf; https://perma.cc/54MF-8U7Y.

[9] The record also makes clear that Bright Ideas itself stands a cognizable danger of being in this same place again if we do not rule on its current challenge. When Bright Ideas made its initial appearance before the hearing examiner, it learned that a mere fifteen days after the challenged ticket was issued, it received another traffic citation that it had yet to receive notice of.

Yet it has never sought to supplement the record with any evidence that it has ceased the challenged conduct, nor has it represented in its pleadings or at oral argument that it has ceased its challenged enforcement practices. *See Wright v. Thomas D. Walsh, Inc.*, 856 A.2d 1108, 1110 n.6 (D.C. 2004) (refusing to consider proffered evidence of mootness where the parties had never moved to supplement the record with evidence of it); *Brown v. Hornstein*, 669 A.2d 139, 141 (D.C. 1996) (same). Its unwillingness to do so is not a point in its favor. The record before us also suggests this is, in fact, a recurring issue at the agency level. Neither the hearing examiner nor the Appeals Board hinted that this was some novel issue of first impression. Both invoked the default speed limit with virtually no analysis of the relevant regulations—the hearing examiner without so much as citing a regulation—as if they had done so before. Neither intimated that this was their first time addressing the defense of an illegible speed limit sign, and there are indications to the contrary.

Second, the District notes that some courts afford a "presumption of good faith" to public officials and asks that we likewise treat its claims of cessation with "some solicitude." *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). Neither this court nor the Supreme Court has recognized such a presumption, however, and it has forceful critics. *See* Joseph C. Davis & Nicholas R. Reaves, *The Point Isn't Moot: How Lower Courts Have Blessed Government*

*Abuse of the Voluntary-Cessation Doctrine*, 129 Yale L.J. F. 325, 328 (2019) ("[A] hard look at both the theoretical and practical justifications for the voluntary-cessation doctrine suggests [the good-faith presumption is unfounded]. Government officials have stronger incentives and a greater ability to engage in the strategic mooting of cases that this doctrine is designed to prevent.").

At a more basic level, the District has not actually made a claim of cessation to which we might afford a presumption of good faith. Even if we were to recognize this presumption, it does not operate when the government's change-of-heart is "mere litigation posturing." *Sossamon*, 560 F.3d at 325. Instead, it typically only comes into play when there is some formal change in government policy, typically via legislative or regulatory amendment, which will "usually [be] enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Libertarian Party of Ark. v. Martin*, 876 F.3d 948, 951 (8th Cir. 2017) (quoting *Teague v. Cooper*, 720 F.3d 973, 977 (8th Cir. 2013)); *accord N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam). The presumption does not extend to bare promises amidst litigation that some practice has been permanently abandoned. *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014) ("[B]ald assertions of a defendant—whether governmental or private—that it will not resume a challenged policy fail to satisfy

any burden of showing that a claim is moot."). And even if it did, the District has made no such promise. At oral argument, counsel for the District disclaimed any change in enforcement policy. That hamstrings its mootness claim. *See* 13C Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure Jurisdiction* § 3533.7 (3d ed., 2022 update) ("Discontinuance claims present little difficulty when it is shown that the challenged activities in fact continue.").

Third, the District cites to *Thorn v. Walker*, 912 A.2d 1192 (D.C. 2006), as an example of a case that we found to be moot despite one party's voluntary cessation of challenged activity. *Thorn* is inapposite. That case concerned a suit to compel the sale of real property in which the seller, after losing in the trial court and before we considered her appeal, voluntarily transferred the property to the buyer, yet still sought to maintain her appeal. *Id.* at 1196. It was the buyer who argued that the transfer mooted any further litigation and we agreed, finding that the seller's transfer left her with no relief to seek on appeal. *Id.* at 1196-97. In other words, *Thorn* is the inverse of this situation, where the party who voluntarily ceased the challenged conduct wanted the appeal to proceed, despite the other party urging that the case be dismissed as moot. The concerns that the voluntary cessation doctrine is designed to address are not implicated in that scenario, so it is no wonder that the doctrine was not discussed in *Thorn*. There is no chance that the seller was trying to strategically

moot the case with her voluntary conduct where she, in fact, was the only party who wanted the appeal to proceed.

Far more analogous is *Hardaway v. D.C. Housing Authority* from the D.C. Circuit, a case in which the D.C. Housing Authority initially denied a plaintiff's request for a "two-bedroom voucher" that would permit her to house a live-in aide. 843 F.3d at 976. The plaintiff sued, and more than two months later while the suit was still pending, the Authority did an about-face, granted her the requested two-bedroom voucher, and then asked the trial court to dismiss the case as moot. *Id.* The trial court agreed that the case was moot because the Authority had "acquiesced to plaintiffs' desired living arrangement." *Id.* at 977. The D.C. Circuit reversed, concluding that the Housing Authority's "act of administrative grace" was insufficient to moot the case where it "retain[ed] authority to revoke that voucher at any time." *Id.* at 979; *see also Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1040 (9th Cir. 2018) (refusing to dismiss a case after the FBI removed the plaintiff from its No Fly List, describing the Bureau's actions as "an exercise of discretion" and finding that "the government has not assured [the plaintiff] that he will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place"). In short, it was not "absolutely clear" to the court that

the challenged conduct "could not reasonably be expected to recur." *Hardaway*, 843 F.3d at 979 (quoting *Laidlaw*, 528 U.S. at 189).  So too here.

Finally, the District argues that this case is moot because its "decision to void the ticket . . . provides all the relief available to the Company in this action."  While that would likely be enough to strip a party of standing before the inception of litigation, it will not always suffice to moot a case once underway.  As the Supreme Court has emphasized, mootness is not simply "standing set in a time frame." *Laidlaw*, 528 U.S. at 190 (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)).  Rather, once standing has been established at the outset of litigation, courts may retain jurisdiction even where the complained-of injury has abated in circumstances when there is some degree of "likelihood that [the appellant] will again suffer the deprivation of [] rights that gave rise to this suit." *Honig v. Doe*, 484 U.S. 305, 318 (1988) (discussing the capable of repetition yet evading review exception).[10]

---

[10] We have previously taken this inquiry one step further, holding that in cases involving "a matter of importance," the question of repetition extends beyond "the particular appellant . . . to others similarly situated." *Tyler v. United States*, 705 A.2d 270, 273 (D.C. 1997) (en banc).  While a $100 ticket is hardly a matter of great importance, the scale on which the District issues and enforces speeding tickets, *see infra*, and the infrequency with which challenges to civil traffic violations reach this court render this a matter of importance that is likely to recur and affect a significant number of others similarly situated if not addressed in this appeal.

When that is the case, our exercise of jurisdiction remains justified when, for instance, the injury is "so inherently transitory" that it evades review, *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (citation omitted), or in these circumstances, where the allegedly offending party has voluntarily abated the injury.[11] The relevant question is thus not whether the District has granted all the relief that Bright Ideas has sought in this particular action, but whether it has demonstrated that there is no cognizable danger of the injury's recurrence. We have already answered that dispositive question in the negative.

**B.**

The District's litigation tactics drive home the need for our review. While its failure to demonstrate that it has ceased the challenged practices would, by itself,

---

[11] Because civil traffic citations are so ubiquitous, the principle that courts will generally not apply a mootness exception where the danger of recurrence stems from the possibility that a party will "violat[e] the law, get[] caught, and be[] convicted," *see Spencer v. Kemna*, 523 U.S. 1, 15 (1998), has no force here. That principle has force in the context of somebody who has committed a serious crime, where we might reasonably expect them not to do so again. But the District issues more automated traffic citations each year than the number of residents who live within its borders, so that the cognizable danger of recurrence for any once-caught driver is evident. Additionally, Bright Ideas' contention is that it did not, in fact, break the law as properly understood, which is an additional reason this principle has no application here.

convince us that this case is not moot, we further note that there are strong reasons for courts not to incentivize strategic litigation conduct that is merely "an attempt to manipulate jurisdiction." *NABP*, 633 F.3d at 1310. For one thing, "strategic, litigation-related acts" are unlikely to endure beyond the conclusion of the litigation, significantly increasing the likelihood that the plaintiff "will be subject to the same action in the future." *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 740 (8th Cir. 2005). But apart from that, we have a strong prudential interest in ensuring that litigants are not permitted to "manipulate the formation of precedent." *In re Nexium Antitrust Litig.*, 778 F.3d 1, 2 (1st Cir. 2015) (citation omitted); *see also Harrell v. Fla. Bar*, 608 F.3d 1241, 1267 (11th Cir. 2010) (noting the "substantial possibility that the defendant has changed course simply to deprive the court of jurisdiction, which itself prevents us from finding the controversy moot") (cleaned up).

In this case, the District's strategic motivations are not in dispute. The District has never offered an alternative explanation for voiding Bright Ideas' ticket, and it has expressly referred to this decision as an attempt to "moot out the case." The timing of the District's attempt to moot this case gives us special concern. Recall that the District voided Bright Ideas' ticket only after (1) it asked us to rule on the merits of this dispute via a motion for summary affirmance, (2) we denied its motion

for summary affirmance, and (3) we informed the parties that this case would be scheduled for oral argument. These actions, while not precisely tipping our hand on the merits of Bright Ideas' appeal, at least signaled our preliminary disagreement with the District's characterization of this case as "simple and straightforward." The District's subsequent about-face—after defending its ticket for eighteen months through two levels of administrative review and before two courts—is best understood as a reaction to that signal.

What likely animates the District's litigation tactics is the fact that challenges to traffic tickets rarely make it up to this court for review. If it scuttles this challenge, a similar challenge is unlikely to make it our way any time soon, so that it can expect to continue its enforcement practices free from this court's scrutiny. Few parties have the resources or wherewithal to run the gauntlet of multiple rounds of administrative review, Superior Court review, and this court's review simply to challenge the comparatively small sum of money that accompanies civil traffic tickets. It is far easier to pay the ticket and be done with it. As best we can tell, we have only one prior published opinion, from about a decade ago, where a party challenged a single civil traffic infraction, *DeVita v. District of Columbia*, 74 A.3d 714, 718 (D.C. 2013), plus a few others where parties challenged a considerable number of these infractions, but those cases too are rare, *see, e.g.*, *Avis Rent-A-Car*

*Sys., Inc. v. District of Columbia*, 679 A.2d 492, 493 (D.C. 1996) (challenging "some 900 notices of infraction"); *Agomo v. Fenty*, 916 A.2d 181, 187-88 (D.C. 2007) (alleging violation of constitutional rights where one plaintiff faced "at least eighteen" tickets and the other "over 100"). The rarity of these challenges in this court gives the District a strong incentive to try to evade review. There is little upside if it wins ($100) and potentially enormous downside if a precedent-setting loss upsets its established enforcement practices on a grand scale.

The District's efforts to moot this case resemble those cases in which a defendant tries to "pick off" a lead plaintiff in a certified class action in an attempt to moot a case. Under those circumstances, federal courts have generally held that the case is not moot, expressing prudential concerns that are likewise present here. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("To deny the right to appeal simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to sound judicial administration."); *see also Wilson v. Gordon*, 822 F.3d 934, 951 (6th Cir. 2016); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011); *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *Zeidman v. J. Ray McDermott*

*& Co.*, 651 F.2d 1030, 1050 (5th Cir. Unit A 1981). In those cases, like this one, the stakes for any individual plaintiff or challenger are typically so small that their opponent might buy them out for a modest sum and—if that were sufficient to moot a case—thereby avoid the potentially enormous downstream consequences of an adverse result if the case were to proceed. The incentives for strategic mooting are immense in both instances, and the reasons for applying the voluntary cessation exception to mootness are at their most potent.

To be sure, institutional litigants have vast discretion in choosing which cases to pursue and thereby have considerable influence in shaping which cases come before our courts. *See* Malcolm L. Stewart, *United States Appeals: Strategic and Policy Considerations*, U.S. Attorney's Bulletin, Jan. 2013, at 13, 15 ("[T]he government generally takes particular care to select favorable 'vehicles' for appellate consideration of recurring legal issues. The best vehicles are cases in which the facts present the government's position in a favorable light, maximizing the likelihood that the government's view will strike judges as intuitively fair."). That discretion extends to the initiation of a case (the District did not have to issue the ticket here), to the decision of whether to appeal an adverse result, and to the pursuit of discretionary review. *Id.* But that discretion is not unbounded. Once those litigants have chosen to initiate court proceedings, or defend themselves

therein, the voluntary cessation doctrine prevents them from abandoning ship at the first whiff of an adverse result. It would be a disservice to the District's courts and the parties who appear before us to allow institutional litigants to subvert the orderly development of precedent though such strategic maneuvering.

Because the District has failed to demonstrate that there is no cognizable danger of its challenged conduct recurring and once again injuring Bright Ideas or those similarly situated, we deny its request to dismiss this appeal as moot.

## III.

We turn now to the merits. "Although this is an appeal from a review of agency action by the Superior Court rather than a direct appeal to us, we review the administrative decision as if the appeal had been heard initially in this court." *DeVita*, 74 A.3d at 719 (quoting *Pub. Emp't Rels. Bd. v. Wash. Tchrs.' Union Local 6,* 556 A.2d 206, 207 (D.C. 1989)). While our review of legal issues is de novo, we generally "defer to the agency's interpretation of the statute and regulations it is charged by the legislature to administer, unless its interpretation is unreasonable or is inconsistent with the statutory language or purpose." *Id.* (quoting *D.C. Off. of Hum. Rts. v. D.C. Dep't of Corr.,* 40 A.3d 917, 923 (D.C. 2012)). Bright Ideas argues that it did not violate the pertinent regulations when the posted speed limit

sign was illegible, and that the District violated its constitutional right to fair notice when the District enforced an unposted default speed limit that most drivers would be unaware of.

We begin by considering Bright Ideas' challenge to how the District interprets the relevant traffic regulations. That is because constitutional adjudication is a matter of "great gravity and delicacy," so our practice is to avoid ruling on constitutional questions unless we have "no other choice." *Blodgett v. Univ. Club*, 930 A.2d 210, 217 (D.C. 2007) (quoting *Lewis v. Hotel & Rest. Emps. Union, Local 25*, 727 A.2d 297, 301 (D.C. 1999)).[12]

Bright Ideas argues that because the speed limit sign "is not reliably posted" where its driver was ticketed, but instead "mounted extraordinarily high" and "obscured by tree branches," the District cannot enforce the posted speed limit and may not resort to enforcing the default speed limit either. The District does not dispute the first part of that argument—that it may not enforce the posted speed limit

---

[12] This principle is so strong that even when the parties present solely constitutional questions, courts sometimes still "avoid deciding the constitutional issues and decide the case on a non-constitutional ground if reasonably possible." *See VNA Hospice of Md. v. Dep't of Health & Mental Hygiene*, 961 A.2d 557, 569-72 (Md. 2008) (collecting cases).

when it is not fairly legible. But it disputes the second part of it and defends the Appeals Board's conclusion that the default speed limit applies and may be enforced whenever a posted speed limit sign is illegible.

We agree with Bright Ideas that the District's interpretation of the relevant regulations is untenable. The traffic regulations permit the Mayor, for any public roadway, to "determine and declare a reasonable and safe speed limit which shall be effective . . . when appropriate signs giving notice of the speed limits are erected." 18 D.C.M.R. § 2200.2. Once a speed limit for a stretch of roadway has been so designated in accordance with § 2200.2, then that speed limit cannot be enforced against a driver if the speed limit sign is obscured or blocked. *See* 18 D.C.M.R. § 2000.5 ("No provision of this subtitle for which signs are required shall be enforced" unless the sign is "in proper position and sufficiently legible to be seen by an ordinarily observant person."). And, contrary to the Appeals Board's reasoning, the regulations do not permit the District to simply enforce the default speed limit when a designated speed limit applies but is not legibly posted. The default speed limit provided in 18 D.C.M.R. § 2200.6 applies only when a speed limit is not "otherwise designated in accordance with § 2200.2."[13]

---

[13] The District makes a belated suggestion that this stretch of Military Road was not "otherwise designated in accordance with § 2200.2," as that phrase is used

The Appeals Board's contrary interpretation of the regulations not only contravenes the regulations' plain language but also gives rise to a host of absurdities. Imagine a stretch of road where the Mayor had determined under § 2200.2 that the reasonable speed was 45 mph and had signs posted to that effect. Under the Appeals Board's and the District's reading of the regulations, if the relevant signage were obscured, a driver traveling at 51 mph on that stretch of road would face a ticket not for traveling 6 mph above the designated speed limit, but for traveling more than 30 mph over the speed limit (with the default now at 20 mph) and face criminal liability and the prospect of up to 90 days' imprisonment for traveling at such speeds. *See* 18 D.C.M.R. § 2200.12. Similarly, if the District were correct that the same driver must obey the 20 mph default speed limit where the posted 45 mph sign is illegible, the compliant driver would likely run afoul of 18 D.C.M.R. § 2200.10, which provides that "[n]o person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic." Such an interpretation would violate the principle that statutes and

---

in 18 D.C.M.R. § 2200.6, because the posted speed limit matches the default speed limit. As we have explained, *supra* note 5, we do not foreclose that possible interpretation of the regulations, because it is enough to say that no argument like that was made before the agency and it does not resemble the Appeals Board's reasoning, making it a non-viable alternative grounds for affirmance.

regulations must be interpreted to avoid "absurd results" and "obvious injustice." *Corbin v. United States*, 120 A.3d 588, 597 (D.C. 2015) (citation omitted).

The District counters with its own posited absurdity, arguing that under the view we adopt here, an obstructed speed limit sign would result in a free-for-all. By its telling, a 15 mph side street would be transformed into the Autobahn if, in place of the posted (but obstructed) speed limit, the default limit could not be enforced. That is incorrect. Elsewhere in its traffic regulations, the District mandates that "[n]o person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions." 18 D.C.M.R. § 2200.3. Thus, where the posted limit is illegible or otherwise obstructed, the District can still cite drivers for traveling at an unreasonable and imprudent speed—precisely what Bright Ideas argued the District was required to show in this case. What the District may not do is enforce either (1) a speed limit posted under 18 D.C.M.R. § 2200.2 where the signage is illegible, *see* 18 D.C.M.R. § 2000.5, or (2) the default speed limit where a speed limit has been "otherwise designated in accordance with § 2200.2," 18 D.C.M.R. § 2200.6. Because the Appeals Board's contrary interpretation of the traffic regulations was unreasonable, we reverse its decision upholding Bright Ideas' ticket.

**IV.**

For the foregoing reasons, the Appeals Board's decision is reversed.

*So ordered.*